The next case that we will call is Sylvain v. Aty Gen, Council, rather than butcher the pronunciation of your name, for which I will need help, I'll defer to you. My name is Neelam Isinola. May it please the court? My name is Neelam Isinola. I should have figured that out. Sorry. I represent the appellants in this matter. I'd like to reserve five minutes for my rebuttal. Great. This court should join the fourth circuit holding Nahash v. Lacerra. An old mandatory detention statute at 8 U.S.C. 1226 C was properly applied to Mr. Sylvainv for two reasons. First, this court should find that the board's interpretation of 1226 C in matter of Rojas is entitled to death sentence because the statute is ambiguous on two different levels and because the interpretation is a permissible construction. Is it correct that Mr. Sylvain did not raise the conditional discharge issue that I think was raised first in the briefs that is not constituting release? Is it a fact that he did not raise that before the district court? My memory of the records are that he did not raise it before the district court. I couldn't find it. The other reason why the court should join the Nahash holding is because even if the statute is providing a statutory timeframe that governs ICE's implementation of mandatory detention, ICE does not lose the ability to enforce 1226 C just because it fails to comply with that statutory timeframe. Would there be any length of time that could be too long when the government would lose the power to detain somebody? After release. After release. A year, two years, 20 years? Three and a half years. The relevant concern is whether there is a removable offense and whether that occurred post TPCR after the transition period custody rules. Mr. Sylvain did have a removable offense that occurred and was released from detention during the implementation, during the effective date of the mandatory detention statute. And so these serve as limits on the delays that the agency can allow. If I could ask a question that really jumps ahead, I guess, of the various deference issues and other issues that have been raised here, including the meaning of when. I can't ever remember a sitting like this where two major questions have been the meaning of when and the meaning of happen. Two terms that one would not think are terribly obscure, but in the settings we face I guess they are a bit. But in the end here, after all is said and done, after all of the issues that have been argued earlier in the briefs, why should any of that affect the authority of the government, of the Attorney General to detain here? How does delay, well before I even ask about prejudice, where is there any textual basis in the statute that would suggest that somehow there is some kind of sanction, say, to the government or some kind of estoppel applied to the government. That they can't detain, notwithstanding the lack of promise. There is no sanction in the statute. The Supreme Court line of cases, including Brock, Farnhart v. Peabody Cole, they established that the sanction has to be explicit in the statute. That Congress has to make its intent clear, that it's cutting off the agency's authority if the agency acts beyond the statutory deadline. Don't we know from Damore, at the very least, in its speaking of the purpose behind the statute, that it was to try to address the circumstances of so many aliens being out there and undetained. That that's a purpose of the statute. So how could we, is it reasonable to think that a statute that is silent on any kind of sanction, that a statute that does not suggest that the government somehow loses its authority to detain, ought to be construed that way. I realize that's a softball, but it's what I'm grappling with here, ultimately in this case, after all the other issues have been addressed. Very much the purpose of enacting mandatory detention was because there was a serious concern that criminal aliens as a group pose particularly high rates of flight risk and criminal recidivism. And so therefore, mandatory detention was proper and constitutional and held that way in Damore v. Kim. The opposing counsel, I believe, argue that the fact that district courts have been applying discretionary detention under 8 U.S.C. 1226A, where they find the gap in time is too long, is not a sanction. It's not a what? It's not a sanction, and therefore is a valid thing to do in this context. But it's simply incorrect to say that 8 U.S.C. 1226A should be read in as the consequence for noncompliance with any statutory deadline in 8 U.S.C. 1226C. As the Supreme Court precedent in Brock and Peabody Cole made clear, Congress has to be clear in putting into words the statute, into words the sanction. This court has discussed in, I believe it's Shenango v. Atfeld, it provided examples in the U.S. Code where Congress has actually put in explicit sanctions where statutory deadlines are missed. 8 U.S.C. 1226A does not look at all like those statutes. All it says is that the alien shall be taken into custody when released. So does that mean that you have in mind there should be no interceding by the courts on behalf of aliens who are arrested 10 years, 15 years, 20 years later? The equities are very compelling. That's what you want to say? Yes. But the fact of the matter is that Demore v. Kinn upheld mandatory detention as constitutional, specifically recognizing that criminal aliens as a group posed such a risk of outflight and recidivism. But put Demore aside for a moment. The issue isn't, well the issue for me in this question is not whether mandatory detention is appropriate. The question is, goes back to Judge Van Anterpen's question, which is what period of time is too long? It's four years here. Suppose it was seven years. Suppose it was nine years. If the group of folks that the statute is aimed at is as elusive as creates the concern to lead to mandatory detention, it'll be possible, it'll happen, that it'll be 9, 10, maybe 11 years before the person is reacquired, let's say. Is that too long? It isn't too long. Demore is important because it's telling us what the purpose of 122060 was, and it's telling us that criminal aliens posed particularly high rates of flight risk. Even when they were under prior detention regimes where they were given bond hearings and were released on bond by IJs, they would not show up for their removal at very high rates. So even if an alien has been released into the community and hasn't committed crimes during that 10 year gap, let's say a 10 year gap, that doesn't say anything about his risk of flight, the risk that he may abscond from his removal proceedings, until he's actually put into removal proceedings himself, and his removal is at stake. That concern that Congress had in drafting mandatory detention with the high rate of flight risk is still alive. Should it matter beyond the length of time that it takes for the Attorney General to exercise his detention authority, whether that delay is based upon mere negligence, or a very high workload, or has some purpose behind it? Is it somehow a purposeful delay? Should that matter? It should matter. Well, I don't mean to answer that way. What I mean to say is that Congress, in drafting the mandatory detention statute, did take account of the fact that ICE or the immigration authorities often encountered problems in identifying criminal aliens and in learning about the release of criminal aliens from criminal incarceration and confinement. The legislative history shows that Congress knew that state and local... And what if the government decided, what if the government had used Mr. Sylvain as a snitch, as an informant? Let's say they had asked him for his cooperation and he gave it. And he gave it for a period of time, a couple of years, and then suddenly decided he didn't want to cooperate anymore. And they pull the plug. They notify ICE and he's detained. Should that type of detention authority be condoned? So ICE had essentially forgiven his criminal convictions... And they purposely allow him to stay out on the street, despite the authority and the ability of the Attorney General to detain him. That's what the Attorney General wants to do. I think this recognizes that there can be many reasons why ICE doesn't pick up a criminal alien immediately, at the precise moment of his release from criminal incarceration. And so what matters, though, is whether the statute compels a reading that the immigration authorities have to take the alien into criminal custody, directly from criminal custody. And the statute simply does not compel that reading. When is ambiguous, because it could mean many things, given the statutory context. There are many definitions of when that are currently in common usage, and many of them apply in the statute's text. When can mean in the event that. It could also mean during the time that. And so if I loan my friend a book, and I tell him to please give me the book back when he's done with it, that doesn't give rise to an expectation that he has to give me the book back as soon as he finishes, at the very moment. It's not that one o'clock in the morning, three o'clock in the morning. So long as he returns it sometime after reading it, I believe that's the expectation that arises. So, and in United States v. Willing, the Supreme Court actually looked at the meaning of the word when, and said that it's ambiguous without further clarification from statutory text. How about the rule of lenity? Why shouldn't we apply that? The rule of lenity shouldn't be applied here for, I think, two reasons. One, because this is a Chevron case, and so the rule of lenity should not trump a reasonable interpretation of the statute. And since the BIA's construction is reasonable, the rule of lenity doesn't apply. Also, in the immigration context, the rule of lenity generally is read to favor aliens because of the harsh consequences of removal statutes, of the harsh consequence of removal itself. This 8 U.S.C. 122060 is not a removability provision. It's a provision regarding detention, and so the consequence is not the harsh sanction of removal. One other thing, what are you, I have a feeling in a few minutes we're going to hear about CESANA, or however you pronounce it. What do you say about CESANA? CESANA is not on point, because CESANA was addressing the effective date provision, the NIIRA, that said that aliens who are released after the expiration of the transition period custody Yes. Basically, CESANA says that we are going to limit the retroactivity of 122060, and so that only if you're released for a removable offense after the effective date can you be detained pursuant to mandatory detention. CESANA didn't look at the meaning of when. It wasn't interpreting whether immigration authorities had to take an alien directly from criminal custody. It simply wasn't looking at the issues that are involved in this case. Haas, however, is a circuit court opinion that is directly on point, and there the court upheld the matter of Rojas. So not only is when ambiguous, but there is another ambiguity in the statute, and that's whether the when release clause is part of the description of the alien. This is important because when we look at the structure of 122060, the first paragraph imposes the duty on ICE to take the alien into custody, but it's the second paragraph that says that criminal aliens described in paragraph one cannot be released. And so it's paragraph two that we have to interpret, and we have to figure out who is an alien described in paragraph one. According to the amici in their briefs, they said that the when release clause is a part of the description. So under their interpretation of the statute, if you're not immediately detained, then you're not described in paragraph one of 122060, and therefore you are eligible for release under paragraph two. But it's not clear that the when release clause is part of the description of an alien in paragraph one. It's a non-restrictive clause. Why would it, look at that subsection structurally. Beginning with the sentence, the attorney general shall take into custody any alien who, and there are four sub-subsections then, which are essentially status type of descriptions, right? And then a continuation of the sentence after a comma, comma after title, when the alien is released. Isn't that the way we are required to read this by its structure? But the fact that when the alien is released, so I think you're saying because it's in this order that we have to read when the alien is released as, is that what you're saying? Yes. It's not a separate provision, it's all a part of subsection one, isn't it? It's all a part of subsection one, but it's a non-restrictive clause because of those commas. And it's also an adverb clause, and so it's going to be modifying either adjectives or verbs. These grammar rules matter because there are two possible objects that could be modified. The phrase, the attorney general shall take into custody, or these four sub-paragraphs that are laying out the aliens whose removable offenses render them subject to mandatory detention. Because of that position there, it's not clear what, when the alien is released is modifying. The interesting thing, though, is that the Third Circuit in Diop... What could it modify? It could be modifying, it could be saying that the attorney general can only take into custody when the alien is released, or it could be saying, you know, the removable offenses have to be, you have to be removable for one of these offenses at the time of your release. But so the... Doesn't it say the latter? It can say both. The fact is it's ambiguous because it could be read both ways, and that's what matters. So long as it's ambiguous, we have to defer to the BIA's interpretation in Matter of Rojas that specifically looked at this provision, said it was ambiguous, and then... How did Rojas say it was ambiguous? Because of grammar, because of the purposes of mandatory detention. The fact that it's just... Do you have Rojas in front of you? No. I think... I can grab it. Would you please? Okay, I think I have it now. Would you go to the portion of the Rojas opinion that speaks to ambiguity? The text of Rojas. The text. The text. There's... Part five. Principles of statutory construction. What do you take from that? That Rojas is saying... The principles of statutory construction section? Yes. That was laying out, I believe, the case law about how we... What guides the interpretation of the statute. I believe that's the Chevron case law. The fact that, you know, it's a... It talks about... Let me jump to what my question is, I'm sorry. It says we find the statutory provision when read in isolation to be susceptible to different readings. But that's not how we are to construe statutory provisions in isolation, is it? Didn't Rojas proceed, really, on a faulty interpretive premise? That one can read a provision in isolation? What I think they're saying is that if we look at only the meaning of the word when, just by itself, in isolation, it could be ambiguous... I'm sorry. It could be ambiguous by itself, but then we have to look to the rest of the statutory text. And that could clarify what when means, and then make the meaning of the word when plain. And so just because something by itself looks ambiguous, the courts can't stop there. They have to look at the rest of the statutory text to clarify the meaning of the word when. I think that's what Rojas is saying. And so, no, it did not proceed on a faulty premise. When we apply that, we can apply that rule in this case, when we, you know, when... You know, well, United States v. Williams essentially says that same concept, that when looks ambiguous, but it could be rendered plain by statutory text. Unfortunately, that's not how AUFC 122060 operates. It doesn't clarify the meaning of the word when. But so, I just want to point out that in DIOP v. ICE, Department of Homeland Security, a recent detention case of this court, the court paraphrased AUFC 122060 on page 230 of its decision. And what it did was, it moved the when release clause right after the phrase, the attorney general shall take into custody, and put it before the noun alien. And so, when it did this, it was essentially... It was implicitly recognizing that when release modifies the phrase, the attorney general shall take into custody, and not the word alien. And so, it's not a part of the description of... Since we're beyond your time, let me ask my colleagues... Oh, I'm so sorry. No, that's all right. It's up to us to control the clock. Not your problem. I take it your view... I know that Judge Smith pointed you to a particular line in the opinion, but that your view of Rojas taken as a whole is that it doesn't focus merely on that singular... We find the statutory provision when read in isolation, and in fact, that the analysis was not read in isolation. That's your point. It's just stating the rule that you can't look at statutory terms in isolation to do your analysis at Chevron step one. You also have to look at the rest of the statute to see if it renders the meaning of the statute clear. And Rojas did that. Rojas conducted a proper Chevron analysis, but it found that the statute was ambiguous because the when-release clause was not made clear. It wasn't clear whether the when-release clause was part of the description of an alien in paragraph two. Okay. Thank you very much. We'll have you back on rebuttal. Mr. Erba. Thank you, Your Honor. Good morning, judges. Andrew Erba for Mr. Sullivan. Your Honor, let me start by answering one of the questions that the panel posed, and we have to understand what the district court ordered in this case. The district court granted a habeas petition and ordered the attorney general or the INS to grant a bail hearing only. It didn't say what should be done at the bail hearing. It didn't say that bail should be granted to Mr. Sullivan. It did not say what amount of bail. That was totally discretionary with the INS. Do you really think that in enacting 1226C that Congress intended to limit the power to take aliens into custody? Your Honor, I think that's a very good question. I think that what Congress intended in that act was for people in incarceration in the judicial system to have a detainer. Congress did not intend for people who were long out of the judicial process to be subject to the same detainer. What would make you think that that was their intent? Well, I think the structure of the act itself. You have the act that says, when released, followed by probation, parole, and that's all. And I think that if the structure of the act, and it's set off in the commas, indicates that Congress wanted to concentrate on people who are under judicial supervision. And the reason I further say that is only those people under judicial supervision could be detained. That's the whole point of the matter. Doesn't the statutory construct tell you that Congress contemplated that everyone who fell into the ambit of the statute would be detained? That was their intent? Well, I think Congress's intent was certainly to detain the people within the judicial process. And I think if we look at when released as a specific language, when you're out of release, that you're entitled to bail for Section A. But my point's slightly different. If Congress contemplated that everyone who fell into this category, when released, would be mandatorily detained, that means that anyone who, for whatever reason, eludes the strictures of mandatory detention, Congress still intends or had the intent that that person or persons be mandatorily detained at some point. It can't be, I presume you'd agree, that suppose 20 people were going to be released from Essex, from a federal facility today, the detention center down the road. And they all walk onto the bus, and one guy says, I forgot something. He goes back. The bus goes away. He comes back to the front. Nobody's there. So he says, hey, it's my lucky day. And he walks away. Well, Congress certainly intended that person to be subject to mandatory detention. You'd agree with that? Yes, I certainly agree with that. Yes. OK. So he says, well, nobody said anything to me. I'm going to go home to Cherry Hill. And he starts living. He works at the mall. Everything's beautiful, right? And somebody knocks on his door a year later and says, ah-ha, Congress had this intent. You were supposed to be on the bus for whatever reason. You didn't make it onto the bus. He deserves a bail hearing because of the fortuity of that situation? Well, I think the issue was one of reasonableness, Your Honor. And I think, obviously, the question is how long you were in the community. But that's a certain thing. OK, my hypothetical. It seems a mistake in that circumstance. And you would say, in my hypothetical, that person who's been in Cherry Hill deserves a bail hearing? No, Your Honor. I think that our position would be that would be a fact that district court should look at in terms of determining the scope of the habeas corpus. And they may look at that and say that person is not entitled to a bail hearing. OK, let me change the hypothetical in one significant measure. The knock on the door to the fellow in Cherry Hill who got off the bus or didn't get on the bus, it's a knock five years later. Congress's intent is the same. Does that person deserve a bail hearing? Your Honor, I think the congressional intent was to act immediately. I think when you have a five-year delay. How can you say the congressional intent was immediately? Congress knows very well how to use the word immediately. That's true. It would have been so easy to insert that term if that had been their intention. And in fact, they did exactly that in the Bail Reform Act, as pointed out in Montalvo-Mirillo, where we have language that a hearing is required immediately upon the person's first appearance. Congress knows very well how to say it. The word immediately is not in the act, Judge. I think the word immediately is taken from all the disregarded opinions that have reviewed this act and have said that Congress intended. So when must then have a great deal more temporal elasticity to it than immediately? I don't disagree, Your Honor. I mean, it's a fact-by-fact situation. There may be individuals that are out for two days, certainly that's immediate. There may be people who are out for a year. And there may be people out for 10 years who are not immediate. And I think that's what the district courts are certainly able to ascertain on the reasonable standard, which I suggest is the standard to be applied, as opposed to what the government. Okay, then go back. We got it reasonable. So just back to my hypothetical for a second. So what's your position on the five-year hypothetical, given the other facts? I think it depends on the facts. I gave you the facts. I think my personal opinion, I think on this statute, five years is not reasonable, Judge. And I think the courts, the district courts that have looked at this again and again have found that it's not reasonable. So four years is reasonable? Well, unless it could be shown that the person hid themselves for four years, Judge. He went to Germany. He went to Jersey. Yeah. If he's at home. That's punishment itself, Judge. Ooh, let's not start. I'm not from Altoona. The question is so blessed. One is a factual reasonable. But I don't think. I'm not getting into this. I don't think Congress intended a four-year gap between release and arrest as mandatory detention. Okay. But then you have to go back to then Judge Smith's question, right? What in the statute would intuit that? From what could we infer that that's so? I think that if you read the when released and the language following it, it's very clear that Congress wanted action when an individual was released from judicial process. And I think the subsequent cases have all, or the better reasoned decisions, have all established that if a person is within judicial process, that is the time to act. If the person is outside judicial process, he's long. Wouldn't we defer then if we don't know what when means? Wouldn't we then defer? Why shouldn't we defer to the BIA's interpretation? Well, I think that issue has risen in all of these cases. And the district judges have found that the BIA's interpretation is unreasonable. Why? Why? I think that if you read Rojas very carefully, what BIA. I haven't read it carefully. That's part of my job. I'm sure, Judge. If we look at Rojas, we realize what Rojas did, and I am not suggesting that Mr. Rojas was not to be mandatory detained. It was a two-day delay, and obviously that could reasonably be a delay which is immediate. However, the remainder of the Rojas decision I think is not in a proper analysis for this act. Ultimately, did Rojas actually tell us what when means? Was that the interpretive part of Rojas that went to the statutory language here? Or were they telling us what an alien described in paragraph one means? I think that it does not. I think that the when decision is, or the discussion of when as a term, is subsequent to Rojas. I don't think Rojas gives us any real guidance, except Rojas would suggest that there is no temporal limitation. Well, let me ask you this question. Excuse me if I can just follow up. My point in raising that question was that if we were to determine from Rojas that they dealt with a term they believed to be ambiguous, but that that term was not when, and rather was the provision alien described in paragraph one, then we have nothing to give Chevron deference to. Well, that's right, Judge. I think that's correct. Here's my question. If Congress, you know what, I'm good. Thank you very much. Thank you, Judge. Ms. Doss. May it please the Court. My name is Alina Doss. I represent Detention Watch Network along with 11 other organizations whose clients and members are directly affected by the issue in this case. I'd like to focus on some of the questions that your honors have raised that I believe point to the extreme nature of the government's position and why the court should affirm the decision of the district court, as well as the vast majority of federal district judges who in this circuit in the last three years alone have granted over 30 habeas petitions involving immigrants harshly affected by a matter of Rojas. So the first issue goes to this idea of congressional intent and what the issue is in this case. This case is not about mandatory detention versus mandatory release. This case is about mandatory detention versus detention with the opportunity for a bond hearing. And when Congress created the mandatory detention statute in 1988, it did so as an exception to the general authority that the agency already has to detain anyone at any time for any reason pending removal proceedings subject to a bond hearing. So when they crafted the detention statute, they were focused on a specific group of people, immigrants who were incarcerated for removable offenses. And Congress's concern was that once these individuals returned to the community, the INS at the time was unable to identify them, let alone find them and place them in removal proceedings. So then Congress's intent pursuant to the statute was that everyone who fell into this category, a particular alien who falls into this category who's incarcerated, upon release from incarceration would go into mandatory detention. Yes, your honor. Right? Okay. Now, you'd agree that if I was one of those aliens and I was being detained for whatever crime and my time for detention for the crime is over tomorrow, that based on the statute, I would be removed to a status of mandatory detention, whether there or somewhere else, correct? Yes, your honor. Okay. So if somehow I was not put in mandatory detention upon release, based on the statute, that would be fortuity, mistake, because the intent was that I should move, I should change status from a felon serving a prison term for a particular offense right into mandatory detention. Yes? Yes. Okay. So if I am not detained mandatorily and that is only fortuity, then what does, how do we draw the line? I know that your focus is on the term immediate, okay? Is a day, is that still immediately, is a week? In my hypothetical, we said a year later and five years later. Tell me the principled way to distinguish between the person who has the knock on the door a year later and five years when it's clear that Congress intended there to be a smooth transition in status from felon serving a term into mandatory detention. Yes, your honor. So we're not here to suggest that this court has to take a rigid view of the degree of immediacy that's required by the statute. But by your answer, you suggest that some immediacy is required. Yes, your honor. And I think that's clear from congressional intent and the language of the statute, the fact that the agency, that I'm sorry, that Congress included the when release clause as part of the one sentence that describes people as subject to mandatory detention in 236C paragraph one. Instead of including that clause as a separate provision that just defines the importance for the agency not to pick people up earlier, to pick them up any time after. So I'll ask you the same question I asked Mr. Erba. Why when the words immediately upon are so easily accessible by draftsmen and have been used by Congress in a separate statute, but a not dissimilar situation with respect to a hearing requirement? Were they not used here? Certainly I don't think courts can necessarily require perfection from Congress when they're writing the statute. We learned that a long time ago. So here I think the reason that we can define congressional intent is that when Congress enacted mandatory detention, originally it was focused on immigrants who were convicted of aggravated felonies upon their completion of their sentence, right? So the language was very clear that they wanted them to be picked up when that sentence was completed. Immigrants at that time argued, well no, I'm being released on probation. I'm being released under supervised release. Technically I'm still serving my sentence, so you can't detain me now. Detain me later. And Congress reacted to that by adding that phrase, regardless of whether the release is on probation, parole, supervised release. Again, the intent is clear that they wanted individuals to be picked up right away. But going back to the question of what right away really means, certainly there is some reasonableness that can be read into the statute. Courts that have grappled with this issue when they actually are trying to talk about the degree of immediacy have said things like on or within a reasonable time after, on or shortly after. This court doesn't need to address that question. Whatever it means, it certainly doesn't mean four years. Why? Because that's an extreme position. In terms of Congress's intent to prevent the return of immigrants to the community, Mr. Sylvan is an individual who has clearly returned to the community. He's not an individual that has evaded the authorities. He's an individual who's in the community. Well, if he hadn't evaded authorities, I presume that he knew that he was subject to mandatory detention. Instead of waiting for a knock on the door, he would have knocked on their door and said, Hey, you missed me. I was supposed to go into mandatory detention, but I didn't. That was improper. Please put me in mandatory detention. Well, immigrants may not understand all of the rules that govern their removability proceedings, but in this case, Mr. Sylvan, he applied for naturalization during this intervening time. He went to the federal building in New York and showed up for an interview. And he was detained in 2011 because the government sent him a letter asking him to report when they decided to place him into removal proceedings, and he showed up in the federal building. And so this is the kind of constitutional avoidance concerns that take place when you have a scheme that, again, is not about automatic release. It's simply about a bond hearing. How is one to presume that an individual like Mr. Sylvan is a flight risk and a danger without giving him a bond hearing, given the fact that the government has detained him out of the community as opposed to out of incarceration? And that is the full statutory scheme. The decisions from federal district court judges, you can take a look at Judge Martini's decision, or Wolfson's, or Judge Checky's, Sheridan. There's a long list of federal court judges who have not done what the government has done, which is essentially a hatchet job on the statute to look at the terms in isolation, but have looked at the statute from top to bottom, considered legislative history, the statutory tools of construction, and have concluded that Congress intended for individuals to be detained immediately have not necessarily reached the issue of whether immediacy requires to be right there at the jailhouse door. Here's what I don't understand. If Congress intended for this change of status from in jail for an aggravated felony into mandatory detention, how can we intuit that Congress would want someone who somehow evaded that process to have a bail hearing? Because that's what Congress provided for in 236A. But that's under a different circumstance, isn't it? That's the general circumstance, and then it created a narrow exception in 236C. And in Cezana v. Gillen, the First Circuit, with Judges Ripple, Howard, and Scalia, took a look at the statute, again for a different purpose, retroactivity, but they looked at the language of the statute and concluded that Congress had a more limited focus than the government's argument. Again, it was to prevent the return of these aliens into the community where they might disappear. But when an individual has already been found, by definition, each person that is subject to the decision in matter of Rojas is somebody that the immigration officials have already identified. They've identified them, they've placed them in removal proceedings, and they've detained them. And the question is just whether they get to have a bond hearing. And again, this raises serious questions of constitutional avoidance. In terms of who can be presumed to be a flight risk or danger, you have to assume that Congress wanted to take that away only for individuals who can be presumed to be a danger to society and a flight risk. And so they were focused on people who are coming out of criminal incarceration. Every site in DeMoore that the government points to, it starts with the description of the problem of immigrants in our prisons and jails and how they're disappearing without the government coming to the jailhouse door to pick them up. That was Congress's concern. Now, for an individual who's been out in the community for years, it's a very different calculus that that individual has ties. Every individual who's been granted a bond hearing through a habeas petition in this circuit has gotten that hearing. And the vast majority of them have been released on bond where the government hasn't challenged as a matter of fact that they're a flight risk or danger. And those where there was evidence of dangerousness have been denied a bond hearing and have remained detained. And that was Congress's intent. And this brings us to other statutory rules of construction like the rule of lenity. With the rule of lenity, it's very clear that Congress, in every case that this court has looked at the rule of lenity, there has been a real focus on these issues of whether or not an individual, there's always an agency decision in that case and whether or not the individual is harshly affected. And we have those harsh effects here. I see that my time is up, and I just wondered if I could briefly address the Montalvo-Murillo point. Very briefly, but yes, it would be helpful. Thank you, Your Honor. That line of case is inapplicable to this issue for four reasons. First, this isn't a case where the government loses its authority to act. They always have the authority to detain. Every single person subjected to matter of Rojas has been detained by the government, and they just get a bond hearing. Holding a bond hearing has never been described by this court or any court as a sanction. The individual in Montalvo-Murillo had a bond hearing, was found to be a flight risk, and then the court said that they had to automatically release them. Here, we're just asking for the basic right that that individual got, which is to have a bond hearing, and then that individual has to comply with whatever the findings of that hearing is. And also, this is not a case where we have to wonder what Congress intended to apply in the absence of the government acting with some degree of immediacy, and that's 236A. The statute does provide the general rule for detention. And finally, the when release clause is not a procedural requirement. Matter of Rojas actually says that it didn't, there's certainly nothing to defer to here with respect to when because it says the statute does direct the attorney general to take custody of aliens immediately upon their release from confinement. So when we're talking about ambiguities, you know, in terms of what this court should rule, it should adopt the reasoning of, again, the vast majority of federal district court judges who've looked at the statute and concluded there has to be some degree. All right, I think you're now beyond the point. Thank you very much. Thank you, Your Honor. Rebuttal, please. I'd just like to address a few points. Congress does know how to say immediately. At 8 U.S.C. 1231 C1, which is a part of the INA dealing with the removal of arriving aliens, it says that the alien shall be removed immediately. And so if Congress wanted to be more specific, it knows how to do that. But as the questioning of my opposing counsel makes clear, even the word immediacy has some ambiguity to it. One of the definitions of the word when that's included in some online dictionary whose name I can't remember is that it can mean at or during the time that, or it could mean just at the moment that. So the issue in this case is whether the definition of when is at the precise moment that. I'm sorry, Your Honor. And so the amici and Sylvain have suggested that there has to be a continuous chain of custody from criminal incarceration or confinement to immigration detention. And they urge a meaning of the word when that means at the precise time. At the same time, though, they're also urging a meaning of when that it means at the time or immediately thereafter. It can't mean both of those things without being ambiguous. And for that reason, the statute is ambiguous at that level and also ambiguous at the level of whether an alien in paragraph one, whether a description of an alien in paragraph one includes the when release clause. While matter of Rojas does acknowledge that when has a connotation of immediacy, in the very next sentence, let me find it so I can quote it. In the very next sentence, it undercuts this connotation saying, Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody. It was concerned with detaining and removing all criminal aliens. And with that, matter of Rojas makes clear that it was not interpreting when to have a meaning of at the precise moment. I'd also like to discuss why the when release clause is a part of AUSC 1226C. It was put in because it recognizes that immigration authorities should not be interfering with periods of criminal confinement or incarceration and taking aliens subject to the mandatory detention statute out of criminal custody while their criminal sentences of confinement are pending. Otherwise, the supremacy clause of article six would require that immigration authorities take mandatory detention aliens directly out of criminal custody. So the when release clause serves that important purpose, is not superfluous. And the way the amici and opposing counsel read the statute completely ignores this point. There's other statutory provisions in the INA that support that the when release clause has this purpose of limiting the immigration authority's ability to interfere with criminal imprisonment. For instance, I think in AUSC 1231, it talks about the fact that only under very limited exceptions can the immigration authorities remove an alien who has a criminal, who has a sentence of criminal incarceration pending. I also want to stress another aspect of why 10-year-old convictions were not a make or break point for Congress in enacting the mandatory detention statute. First of all, a 10-year-old conviction can still render you removable. Congress has never said that the age of these convictions, it has still allowed aliens to be rendered removable by age of convictions. And the fact of the matter is that criminal aliens have limited avenues of relief available to them in their removal proceedings. And so that's part of the reason why they pose such a great risk of flight. A fact that was recognized in De Moore. With that, Your Honors, I would like to conclude. Because the statute is ambiguous and because even if it is read to provide a statutory deadline, it does not provide a sanction for noncompliance. And for that reason, the district court should be reversed and Mr. Sylvain should be deemed properly detained under 1226C. Thank you, Your Honor. Thank you very much. And thank you to all of counsel. This is a very interesting, highly technical and not easy case. It's an important case. We thank you for your help.